IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

MACKING NETTLES
    Plaintiff,

v.

JANE DOE #1 (Nurse)
RESSIE A. STRANALY, RN
BETHANY STAIN (Head of Medical)
D. PLUMM (Resident Unit Mgr.)
R. BATHO (Asst. Deputy Dir.),
et al.
    Defendants

FILED - MQ
October 20, 2021 9:47 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: mlc SCANNED BY: MC 10/20/21

2:21-cv-218
Maarten Vermaat - Magistrate Judge

COMPLAINT for VIOLATION of CIVIL RIGHTS
UNDER THE EIGHTH and FIRST AMENDMENTS
42 U.S.C. 1983

I, Plaintiff Nettles, under 42 U.S.C. 1983, bring forth a deliberate indifference claim in violation of the Eighth Amendment against all named state defendants; deprivation of Plaintiff's right to redress claim in violation of the First Amendment against Defendant state correctional officers; and cruel and unusual punishment claim in violation of the Eighth Amendment against said state correctional officers.

I am a convicted and sentenced state prisoner.

Plaintiff is requesting a jury trial.

Defendant Jane Doe #1, nurse, misused her authority afforded through her state medical license as a nurse and as an employee given through the state as a nurse for the Michigan Department of Corrections when Defendant Jane Doe #1, nurse, refused Plaintiff required pain pills while in segregation on medical quarantine for the shingles rash that is medically known to cause intense pain, forcing Plaintiff to endure the pain in quarantine.

Defendant Stranaly, RN, misused her authority afforded through her state medical license as a registered nurse and an employee given through the state as a registered nurse for the Michigan Department of Corrections when Defendant Stranaly, RN, refused Plaintiff required pain pills for the very painful rash called shingles for which medical was treating Plaintiff who had been placed in segregation on medical quarantine that lasted five days, then released still under treatment taking prescribed medication but was refused required pain pills by Stranaly, RN, who clearly knew the Plaintiff still suffered serious pain from the rash post quarantine as the rash is medically known to cause intense pain even long after the rash dries up, something stated in writing by Defendant Stranaly, RN, in her responsive kite, yet refused Plaintiff required pain pills at his request, deliberately forcing Plaintiff to suffer the intense pain for more than a month without pain pills.

Defendant B. Stain abused her authority afforded her through medical license and as a medical personnel given through the state as an employee for the Michigan Department of Corrections when this person reviewed and approved Stranaly's denial of required pain pills to Plaintiff even while he was still under treatment on prescribed medication for the rash whose intense pain is medically known to last long after the rash dries up, pain which Plaintiff suffered for a month being denied required pain pills.

2

Defendant John/Doe, doctor, abused his/her authority afforded through her state medical license as a doctor and an employee through the state as a doctor for the Michigan Department of Corrections when refusing to prescribe Plaintiff required pain pills for the very painful shingles rash for which medical was treating him, as the rash is medically known to cause severe pain long after the rash dries up, yet Defendant John/Jane Doe, doctor, failed to prescribe Plaintiff required pain pills forcing Plaintiff to endure this long-lasting pain for more than a month without pain pills.

Defendant John Doe #1, correctional Officer, misused his authority given him through the state as a correctional officer for the Michigan Department of Corrections when he, in agreement with other correctional officers, all refused Plaintiff his pain pills out of his property, denied Planitiff grievances upon request, even denied Plaintiff clean clothes after showering, deliberately forcing Plaintiff to suffer the pain he complained of, subjecting Plaintiff to re-infection from dirty infected clothes he wore for 4 of 5 days in quarantine, and blocking Plaintiff from grieving his issues until let out of quarantine after five days, all because the officers' so-called fear of contracting the rash from anything the Plaintiff touched despite all officers had full PPE's (gloves, masks, face shields, body suits) due to the spread of covid-19. By any means, the rash is no justification whatsoever to deny Plaintiff a grievance

3

or required clean clothes, which are not "privileges" they called them, but Constitutional rights of Plaintiff's.

Defendant D. Plumm, Resident Unit Mgr., abused his/her authority afforded him/her through the state as an employee of the Michigan Department of Corrections when he reviewed and approved the inhumane treatment of all the Defendant correctional officers, as Defendant D. Plumm referenced that Plaintiff receiving a grievance and clean clothes are "privileges," not rights, thus approving their denial.

Likewise, Defendant R. Batho, Assistant Deputy Director (ADW) abused his authority afforded him through the state as an employee of the Michigan Department of Corrections as ADW by reviewing and approving the denial of grievances and required clean clothes to Plaintiff while medically quarantined for shingles.

### STATEMENT OF CLAIM

#### A.
#### EACH DEFENDANT VIOLATED THE EIGHTH AMENDMENT BY THEIR DELIBERATE INDIFFERENCE IN REFUSING PLAINTIFF REQUIRED PAIN PILLS FOR THE VERY PAINFUL RASH FOR WHICH HE WAS BEING TREATED BY MEDICAL

On Saturday, April 10, 2021, approximately 10a.m. at the Chippewa Correctional Facility, 4269, West M-80, Kincheloe, MI 49784, the Plaintiff went to medical for some very painful red spots wrapping around his entire left leg.

A nurse had looked at Plaintiff's leg and immediately recognized it as a contagious very painful rash called

4

shingles which she informed Plaintiff attacks muscles which causes the intense pain. She told Plaintiff he would have to be immediately quarantined in segregation because the rash was contagious, then she made a phone call in the presence of Plaintiff to a doctor regarding what medication to give Plaintiff. She hung up and informed Plaintiff that medical there did not have on hand the proper dosage of predisone tablets ordered by the doctor, thus, gave Plantiff enough predisone, acyclovir, and some single packets of pain pills (tylenol and ibuprofen which have two pills a packet) all to carry Plaintiff over until two days later on Monday when his prescriptions would come. She labeled the predisone and acyclovir pills of how many take daily but not the pain pills which she stated take as needed for the pain.

Two days later on Monday, April 12, 2021, around 10a.m. the Plaintiff was given a prescription for only predisone and acyclovir but nothing for his serious pain as he was out of the pain pills given him in the beginning to carry over with the other medication until that current Monday. He asked for pain pills at that moment from Jane Doe #1, nurse, who stated "okay" but never brought any pain pills. This went on each day that a nurse would do a cell-side check of the rash which was only once a day but neither ever brought back any pain pills. The pain was so great that Plaintiff started banging on his door and yelling for a nurse when one would make a round for other prisoners,

5

mostly covid-19 prisoners, but Plaintiff's agony calls went unanswered until one night the new nurse had answered and she went and brought back Plaintiff two packets of pain pills that helped into the next morning. Plaintiff had not seen the new nurse again while in quarantine as he continued to ask for pain pills and was told okay but yet never given the pain pills, forced to suffer the pain every day except when initially given pain pills for two days and when the new nurse gave him two packets.

Plaintiff then told the guards of his pain and asked would they get his pain pills out of his property, a few medically prescribed tylenol pills he had from left over when he had covid-19. However, the guards all refused to get Plaitiff his pain pills out of his property as well as denied him everything else. In other words, policy allowed that all prisoners on medical quarantine be given all their property because they were in segregation not for punishment but medical quarantine; therefore, while all other prisoners on medical quarantine, mostly covid-19 prisoners, were given all their property(food, tv, music, clothes, books, writing material, etc., plus able to use the phone, microwave, sink, etc.) the Plaintiff was denied <u>all</u> of that merely because he had the shingles which the guards acted afraid of catching from Plaintiff that they refused touching anything of the Plaintiff's, but they did not stop there but denied him, so

much so, the guards even refused Plaintiff to send out any mail or kites, even denied to give or allow Plaintiff to send out a grievance at his request, all because the guards would have to touch the items despite they all had full PPE's due to the serious spread of covid-19. John Doe #1, a rookie correctional officer, had informed the Plaintiff of the discussion by all the segregation guards to come to the conclusion Plaintiff gets "nothing" due to fear of contracting the rash from him despite they all having full PPE's due to the serious spread of covid-19.

On April 15, 2021, around 11a.m. after five days in quarantine the rash dried up good enough to let Plaintiff out of quarantine, however, he was still on predisone and acyclovir medication whose prescription did not end until April 20, 2021. As shingles is medically known to be very painful long after the rash dries up, thus, Plaintiff was still suffering serious pain and used his leftover tylenol pills medically prescribed him when he had covid-19. The pills lasted him for about three days, then the Plaintiff kited medical for some pain pills on April 18, 2021. On April 19, 2021, Defendant Stranaly, RN, in her responsive kite refused Plaintiff required pain pills, writing, "You can take tylenol for the pain," suggesting Plaintiff get his own pain pills despite he was still under medical's treatment taking predisone and acyclovir medication, yet Stranaly, RN, refused Plaintiff required pain pills

7

just as he was denied in quarantine. Defendant Stranaly very well knew Plaintiff was suffering serious pain even post quarantine based on her own words in writing, stating: Plaintiff "still have shingles pain," "It is common for the pain to last well beyond when the lesions dry up," and "I am attaching some information on shingles from Mayo Clinic," which was a print out that repeatedly stated how painful shingles is: "very painful," "pain is usually the first symptom of shingles," "For some the pain can be very intense," "For some people shingles pain continues long after the blisters have cleared. This condition is known as postherpetic neuralgia." Therefore, clearly her written statements and information provided to Plaintiff prove Defendant Stranaly, RN, unequivocally knew Plaintiff was still suffering intense pain from the rash after quarantine, yet with Plaintiff still under treatment taking meds, she refused him required pain pills, suggesting he get his own, forcing Plaintiff to suffer the intense pain for a month. This denial of pain pills by Defendant Stranaly, RN, serves as clear proof Plaintiff was also denied required pain pills in quarantine as stated. They deliberately refused him required pain pills, forcing him to suffer the pain.

And to any notion that the Plaintiff was required to purchase his own pain pills goes against all medical standards and practices which is proven by the fact when Plaintiff had covid-19 with its painful symptoms he was pre-

8

scribed tylenol pills for the pain despite he could have purchased them himself. And to Defendant Bethany Stain falsely writing, "The patient was...prescribed Tylenol," it is disproved by the own writing of Defendant Stranaly, RN, stating, "Continue taking your medication and you may use tylenol for the pain." If tylenol was part of the medication, it would be no need to tell Plaintiff "and you may use tylenol for the pain." Clearly this proves that tylenol was not part of the medication.

Furthermore, even if Plaitiff could purchase his own medication he could not do so right after quarantine given how the store operates: the store only delivers every two weeks and there is a deadline to place store orders. When Plaintiff was let out of quarantine the deadline had just passed, meaning the Plaintiff would have to wait two weeks to place his order, then another two weeks to receive it, forcing Plaintiff to suffer the intense pain for a month before he could purchase his own pain pills which Plaintiff was not required, particularly still treated by medical.

### B. DEFENDANT CORRECTIONAL OFFICERS DEPRIVED PLAINTIFF OF THE RIGHT TO REDRESS, IN VIOLATION OF THE FIRST AMENDMENT WHEN THEY REFUSED PLAINTIFF A GRIEVANCE FORM

While Plaintiff was medically quarantined in segregation for the painful rash shingles he was refused required pain pills by medical and the guards, thus, asked for grievances to redress the issues among other issues such as Plaintiff

being refused required clean clothes by the guards, but the Defendant correctional officers refused Plaintiff any grievance or even to send it out as well as mail, kites, etc., all because of their so-called fear of contracting the rash by touching anything the Plantiff touched despite all the officers had full PPE's(gloves, masks, face shields, body suits) due to the serious spread of covid-19. Plaintiff was unable to obtain and file a grievance until out of quarantine after five days. The rookie Defendant correctional officer informed Plaintiff that the officers had a discussion and come to a conclusion they would deny him everything because they did not want to catch the rash from him despite, again, they all had full PPE's. No rash justifies denial of grievances and required clean clothes due to the guards' so-called fear of contracting rash -- having PPE's.

C.
DEFENDANT SUFFERED CRUEL AND USUAL PUNISHMENT
IN VIOLATION OF THE EIGHTH AMENDMENT WHEN
THE DEFENDANT CORRECTIONAL OFFICERS REFUSED
HIM CLEAN CLOTHES, SUBJECTING HIM TO RE-INFECTION
OF HIS RASH FOR WHICH HE WAS MEDICALLY QUARANTINED

While Plaintiff was placed in segregation on medical quarantine for a very painful rash called shingles, the Defendant correctional officers refused him required clean clothes or even to have his clothes washed, forcing Plaintiff to wear the same dirty infected clothes subjecting him to re-infection and longer healing time, all because of the guards' so-called fear of contracting the rash despite all having full PPE's due to the serious spread of covid-19.

## RELIEF

The Plaintiff is seeking monetary damages including punitive damages, but sets forth no particular amount at this junction.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

#### STEP I

**Grievance One:** On Correctional Officers
**Filed:** 4-15-21
**Issue:** The Plaintiff was refused grievances and clean clothes while on medical quarantine placed in segregation for a painful contagious rash.

**Step I Response:** Before Plaintiff received a response he transferred to a different facility on 4-29-21, from the upper peninsula to down state. These sudden transfers by the facility after certain grievances are meant to moot the grievance, thinking if they ride the prisoner to a different facility he will be satisfied and do not follow up on the grievance. Plaintiff is not one of those prisoners. As he awaited the Step I response the deadline had elapsed on 5-7-21 for a response.

**Grievance Two:** On Health Care
**Filed:** 4-18-21
**Issue:** While Plaintiff was medically quarantined placed in segregation for a very painful rash called shingles medical refused Plaintiff required pain pills.

**Step I Response:** As this grievance was filed 3 days after grievance one, Plaintiff was transferred on 4-29-21, before receiving a response As he awaited response at the facility to which he transferred, the deadline had elapsed on 5-11-21 for a response.

11

### STEP II

Due to no Step I response to either grievance, Plaintiff immediately kited for a Step II appeal for both grievances on 5-6-21 and 5-11-21 at the facility to which he was transferred which responded "Follow up your request at URF," the grieved facility. Thereafter, Plaintiff immediately sent a request via first-class mail around 5-16-21, to URF for his Step II appeal forms.

On 6-4-21, Plaintiff received from URF a Step II form for each grievance which suspiciously was accompanied with the Step I responses dated 4-27-21 from Health Care and 4-29-21, for the guards: Health care response("patient was...prescribed tylenol" which is disproved(ante 9 line 3)) and guards response("prisoner was provided adequate living conditions"; denied grievances, clean clothes, and pain pills are not adequate). The fact these Step I responses showed up a month past their deadlines while dated timely after Plaintiff's Step II appeal requests due to no Step I responses is very questionable.

If the grievances were timely responded and mailed as dated, the Plaintiff would have received them timely, not on 6-4-21, along with the appeal forms, nearly a month after their deadlines to respond and weeks past the deadlines for Plaintiff to respond having only 10 business days per policy PD 03.02.130. The evidence by the Step II Respondents point to the dates being back-

12

dated and manipulated by the Respondents who obviously held their responses long past Plaintiff's response deadlines to make it appear Plaintiff missed his deadlines by more than a month, thus, grounds to deny.

This is proven by the Step II Respondents making multiple changes to the dates on Plaintiff's Step II appeal forms. On the health care appeal form the Respondent and grievance coordinator both actually changed the dates that Plaintiff's appeals were said to have been received by them as both dates were erased with wite-out and changed. Then on the Step II appeal form on the guards the Respondent changed the date it was returned to Plaintiff by actually crossing out "6-2," then writing "6-17-21," making it appear their responses were sent up to two weeks earlier to Plaintiff when considering the Respondent was about to write possibly "6-29." The Step II Respondent was so manipulating the dates that this person actually responded to the wrong grievance to Plaintiff's medical grievance. Clearly these multiple date changes by the Respondents and Grievance Coordinator discredit them, to think the Plaintiff missed every deadline by more than a month contrary to his kites mentioned at Step I showing his diligence to obtain Step II appeal forms to appeal. Common sense and inference has to be used here. All evidence shall be presented at the proper junction.

13

*STEP III*

*Given the apparent manipulation of dates by the Step II Respondent who obviously sat on their response until long after Plaintiff's deadlines to respond had elapsed, the Plaintiff's appeals were denied as untimely for more than a month past the Step III deadlines.*

## PREVIEW LAWSUITS

*Plaintiff has had no case dismissed due to the three-strike rule.*

PREVIOUS FEDERAL LAWSUITS

A. MACKING NETTLES v. UNKNOWN TREMBLAY(prison guard), filed around July 2020, case 2:20-cv-163, Western District Judge Robert Jonker, dismissed due to ruling Plantiff failed to state claim, 9-23-20.

B. MACKING NETTLES v. SMOKER(prison guard), et al., filed around 1-13-14, Western District, do not recall case no., Judge Robert Jonker, all but retaliation claim dismissed, did not pursue further.

C. MACKING NETTLES v. CRAIG WALLACE, et al., filed 12-7-20, case 2-20-cv-00241-HYJ-MV, Dismissed w/o prejudice for failure to pay filing fee, May 2021.

D. MACKING NETTLES v. CRAIG WALLACE, et al., filed 8-2-21, case 2:21-cv-184, Judge Maarent Vermaat, Western District, pending.

PREVIOUS STATE LAW SUITS

A. MACKING NETTLES v. CRAIG WALLACE, et al., filed around 5-2020, case 20-00055-MP, Judge Collen A. O'Brien, dismissed for failure to state number of prior lawsuits

## CERTIFICATION FOR CLOSING

Plaintiff certifies that this complaint complies with Federal Rule of Civil Procedure 11 and that the factual contentions absolutely have evidentiary support.

Date  10-04-21

Macking Nettles  271812
Carson City Corr. Fac.
10274 Boyer Road
Carson City, MI 48811

Macking Nettles 271812
Carson City Correctional Facility
10274 Boyer Road
Carson City, Michigan 48811-9746



Office of The Clerk
United States District Court
330 Federal Building
202 Washington St.
P.O. Box 698
Marquette, Michigan 49855