UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MACKING NETTLES, JR.,

              Plaintiff,                    Case No. 2:21-cv-218

v.                                   Honorable Maarten Vermaat

UNKNOWN PARTY #1 et al.,

              Defendants.
_____/

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

      This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

      "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Assistant Deputy Warden R. Batho, Resident Unit Manager D. Plumm, Corrections Officer Unknown Party #3, Doctor Unknown Party

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

#2, Head of Medical Bethany Stain,[2] and Registered Nurses Unknown Party #1 and Ressie A. Stranaly.

Plaintiff alleges that on April 10, 2021, he went to the medical department at URF because of "very painful red spots wrapping around his entire left leg." (ECF No. 1, PageID.4.) A nurse diagnosed Plaintiff with shingles. (*Id.*, PageID.4–5.) The nurse told Plaintiff that he would have to be quarantined because the rash was contagious, then she called a doctor (presumably Defendant Unknown Party #2) regarding medication. (*Id.*, PageID.5.) After hanging up the phone, the nurse told Plaintiff that "medical there did not have on hand the proper dosage of [prednisone] tablets ordered by the doctor, thus, gave Plaintiff enough [prednisone], acyclovir, and some single packets of pain pills (Tylenol and ibuprofen which have two pills a packet) all to carry Plaintiff over until two days later on Monday when his prescriptions would come." (*Id.*) The nurse "labeled the [prednisone] and acyclovir pills of how many [to] take daily but not the pain pills[,] which she stated take as needed for the pain." (*Id.*)

Two days later, on Monday, April 12, 2021, Plaintiff received prescriptions for prednisone and acyclovir but nothing for pain. (*Id.*) By that time, he was out of the pain pills he had been given on April 10th. (*Id.*) Plaintiff asked Defendant Unknown Party #1 for pain pills. (*Id.*) She responded, "okay," but never brought any pills to him. (*Id.*) Plaintiff avers that this "went on each day that a nurse would do a cell-side check of the rash which was only once a day but neither ever brought back any pain pills." (*Id.*) Plaintiff contends that he was in so much pain that he "started banging on his door and yelling for a nurse when one would make a round for other prisoners." (*Id.*) One night, a new nurse brought Plaintiff two packets of pain pills, which Plaintiff alleges "helped into

---

[2] Plaintiff names "Bethany Staine" in the caption of the complaint but spells her last name as "Stain" throughout the body of the complaint. The Court, therefore, adopts "Stain" as the proper spelling of this Defendant's name.

the next morning." (*Id.*, PageID.6.) Plaintiff did not see that nurse again, as he "continued to ask for pain pills and was told okay but yet [was] never given the pain pills." (*Id.*) Plaintiff was in quarantine for five days, from approximately 10:00 a.m. on Saturday, April 10, 2021, to approximately 11:00 a.m. on Thursday, April 15, 2021. Plaintiff was provided pain pills for three of those five days.

Plaintiff had Tylenol of his own in his personal property "left over [from] when he had COVID-19." (*Id.*) Plaintiff asked guards to retrieve those pills for him, but they refused to do so. (*Id.*) The guards also denied him all his property because he had shingles. (*Id.*) Plaintiff avers that the guards "acted afraid of catching [shingles] from Plaintiff [and] refused touching anything" belonging to him. (*Id.*) The guards also refused to allow Plaintiff to send out mail or kites, and refused to give him a grievance form, "all because the guards would have to touch the items despite [the fact that] they all had full" personal protective equipment because of COVID-19. (*Id.*, PageID.7.) Defendant Unknown Party #3 told Plaintiff "of the discussion by all the segregation guards to come to the conclusion Plaintiff gets 'nothing' due to fear of contracting the rash from him." (*Id.*)

On April 15, 2021, after five days in quarantine, Plaintiff's rash had dried up well enough for him to leave quarantine. (*Id.*) He was, however, still taking prednisone and acyclovir. (*Id.*) Plaintiff avers that he was still suffering serious pain "and used his leftover Tylenol pills medically prescribed [to] him when he had COVID-19." (*Id.*) Those pills lasted for three days. (*Id.*) On April 18, 2021, Plaintiff sent a kite to medical, asking for more pain pills. (*Id.*) Defendant Stranaly responded, "You can take Tylenol for the pain," suggesting that Plaintiff "get his own pain pills despite" still being under medical treatment since he was still taking prednisone and acyclovir. (*Id.*) Plaintiff avers that Defendant Stranaly knew that he was suffering from pain because she

stated, "It is common for the pain to last well beyond when the lesions dry up," and attached information on shingles from the Mayo Clinic. (*Id.*, PageID.8.) Plaintiff maintains that Defendant Stain reviewed and approved Defendant Stranaly's denial of pain pills. (*Id.*, PageID.2.)

Plaintiff alleges further that he was unable to purchase his own Tylenol through commissary after being released from quarantine because "the store only delivers every two weeks and there is a deadline to place store orders." (*Id.*, PageID.8.) He states that when he was released from quarantine the "deadline had just passed, meaning the Plaintiff would have to wait two weeks to place his order, then another two weeks to receive it, forcing Plaintiff to suffer the intense pain for a month." (*Id.*)

Plaintiff indicates that he was unable to file a grievance about the matter until five days after he was released from quarantine because corrections officers, including Defendant Unknown Party #3, refused to give him a grievance form. (*Id.*, PageID.10.) He also contends that while he was in quarantine, corrections officers, including Defendant Unknown Party #3, "refused him required clean clothes or even to have his clothes washed, forcing Plaintiff to wear the same dirty infected clothes subjecting him to re-infection and longer healing time." (*Id.*) Plaintiff suggests that Defendants Plumm and Batho reviewed and approved the denial of grievances and clean clothes. (*Id.*, PageID.4.)

Based on the foregoing, Plaintiff asserts violations of his First and Eighth Amendment rights. Plaintiff seeks unspecified damages, including punitive damages. (*Id.*, PageID.11.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more

than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Claims Against Defendant Stain, Plumm, and Batho

Plaintiff seeks to hold Defendant Stain liable for reviewing and approving Defendant Stranaly's denial of pain pills to Plaintiff. (ECF No. 1, PageID.2.) He also suggests that Defendants

Plumm and Batho are liable for violating his constitutional rights by reviewing and approving the denial of grievances and clean clothes by corrections officers. (*Id.*, PageID.4)

The Court's reading of Plaintiff's complaint leads the Court to conclude that Plaintiff seeks to hold Defendants Stain, Plumm, and Batho liable because of their supervisory positions within URF. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v.*

*Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Stain, Plumm, and Batho encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct. His vague and conclusory allegations of supervisory responsibility, including his statements that they "reviewed and approved" the conduct at issue, are insufficient to demonstrate that Defendants Stain, Plumm, and Batho were personally involved in the events of which Plaintiff complains. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Plaintiff's claims against Defendants Stain, Plumm, and Batho are premised upon nothing more than *respondeat superior* liability and, therefore, will be dismissed.

### B.      First Amendment Claim

Plaintiff maintains that Defendant Unknown Party #3 violated his First Amendment right to redress by refusing to provide a grievance form while Plaintiff was in quarantine. (ECF No. 1, PageID.9–10.) Defendant Unknown Party #3's actions, however, have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Furthermore, even if Plaintiff had been improperly prevented or delayed from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 641–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable First Amendment claim against Defendant Unknown Party #3.

### C.      Eighth Amendment Claims

Plaintiff contends that Defendants Unknown Party #1, Stranaly, Unknown Party #2, and Unknown Party #3 violated his Eighth Amendment claims by denying him access to pain pills, such as Tylenol or ibuprofen, while Plaintiff was suffering from shingles. Plaintiff also alleges that Defendant Unknown Party #3 violated his Eighth Amendment rights by denying him access to clean clothes during quarantine, forcing Plaintiff to wear his dirty, shingles-infected clothes.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting

*Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of

recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

## 1.    Denial of Pain Pills

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding

that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state

a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Here, Plaintiff contends that Defendants Unknown Party #1 and Stranaly knew that he was suffering pain from the shingles rash and yet failed to provide him Tylenol. (ECF No. 1, PageID.1–2, 5, 7–8.) He also alleges that when he asked Defendant Unknown Party #3 to retrieve the Tylenol he had in his personal property, Defendant Unknown Party #3 refused because he was afraid of catching shingles from Plaintiff. (*Id.*, PageID.3, 6.) Finally, Plaintiff suggests that Doctor Unknown Party #2 was also deliberately indifferent to Plaintiff's pain.

Even accepting that shingles and pain from shingles represent a serious medical need, Plaintiff's allegations do not support the inference that these Defendants were deliberately indifferent to that need. Plaintiff was promptly diagnosed and quarantined and provided sufficient medication—prescription medication and Tylenol—to get through the first weekend of quarantine. The nurse, Defendant Unknown Party #1, who brought Plaintiff's prescription medications on his first Monday in quarantine did not bring additional Tylenol. Plaintiff asked for more Tylenol. The nurse agreed, but then never returned with more Tylenol.

The nurse's response to Petitioner's request does not support an inference of deliberate indifference. She apparently agreed to bring Tylenol, but then she failed to do so. It is certainly

14

possible that the nurse's failure was intentional but Plaintiff does not allege any facts to support that inference. It is also possible that the failure was inadvertent and the nurse was simply negligent. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. Here, there is nothing in Plaintiff's complaint that might distinguish Defendant Unknown Party #1's purported deliberate indifference to Plaintiff's needs from simple negligence, which *Farmer* has held is not enough for an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). The Court, therefore, will dismiss Plaintiff's Eighth Amendment claim against Defendant Unknown Party #1.

Plaintiff also contends that Defendant Unknown Party #2, a doctor, violated his Eighth Amendment rights by "refusing to prescribe Plaintiff required pain pills for the very painful shingles rash for which medical was treating him." (*Id.*, PageID.3.) As an initial matter, Plaintiff does not explicitly reference Defendant Unknown Party #2 in his factual allegations. Rather, he avers that on April 10, 2021, the nurse who initially examined him called a "doctor regarding what medication to give Plaintiff." (*Id.*, PageID.5.) Presumably, that doctor is Defendant Unknown Party #2. This is the only interaction Plaintiff alleges with the doctor.

Plaintiff's complaint, however, is devoid of any facts from which the Court could infer that the doctor was aware that Plaintiff was suffering pain from the shingles rash and denied him pain pills. Once again, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. There is nothing in Plaintiff's complaint that might distinguish Defendant Unknown Party #2's deliberate indifference to Plaintiff's needs from simple

negligence, which *Farmer* has held is not enough for an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). The Court, therefore, will dismiss Plaintiff's Eighth Amendment claim against Defendant Unknown Party #2.

Plaintiff also complains that Defendant Stranaly was deliberately indifferent to Plaintiff's pain. Defendant Stranaly responded to Plaintiff's written request for Tylenol in writing. She acknowledged that Plaintiff's pain was understandable and that Plaintiff should take Tylenol for the pain. Plaintiff took the response as a suggestion that Plaintiff purchase Tylenol from the prison store. Plaintiff does not indicate that such a purchase was financially infeasible; instead he claims that the timing was a problem. The store only delivered every two weeks, and he had missed the window that could have provided him immediate relief. Plaintiff does not claim that he told Defendant Stranaly that he was unable to purchase his own Tylenol, nor does he claim that Defendant Stranaly otherwise knew that Plaintiff was unable to purchase his own Tylenol. Rather, Plaintiff claims that he should not have been required to purchase his own Tylenol when he had a documented medical problem.

The facts Plaintiff has alleged do not support an inference that Defendant Stranaly was aware of, *and disregarded*, a serious medical need. Defendant Stranaly acknowledged the need and suggested that Plaintiff purchase Tylenol to address it. Although Plaintiff alleges facts that support the inference that Defendant Stranaly's approach would not work, he does not allege facts that support the inference that Defendant Stranaly knew that approach would not work. Absent such allegations, Plaintiff has failed to satisfy the subjective component of his claim.

Finally, Plaintiff claims that prison guard Unknown Party #3 was deliberately indifferent to Plaintiff's serious medical need because the guard would not retrieve Tylenol from Plaintiff's

personal property. Plaintiff was in medical quarantine. He was seen by health professionals every day. Defendant Unknown Party #3 was entitled to rely on the professional judgment of those health professionals. *See McGaw v. Sevier Cnty.*, 715 F. App'x 495, 498 (6th Cir. 2017) ("Cases in this and other circuits demonstrate that a non-medically trained officer does not act with deliberate indifference to an inmate's medical needs when he 'reasonably deferred to the medical professionals' opinions.'" (quoting *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006)); *Taylor v. Hillis*, No. 1:10-CV-94, 2014 WL 1464315, at *4 (W.D. Mich. Apr. 15, 2014) (corrections officer entitled to rely on the judgments of medical professionals regarding the appropriate course of treatment). Accordingly, Plaintiff's allegations do not support an inference that Defendant Unknown Party #3's failure to retrieve Plaintiff's stash of leftover Tylenol rises to the level of deliberate indifference to Plaintiff's medical needs.

### 2.    Denial of Clean Clothes

Plaintiff alleges further that Defendant Unknown Party #3 violated his Eighth Amendment rights by refusing him clean clothes for the five days Plaintiff was in medical quarantine. (ECF No. 1, PageID.10.) Plaintiff must allege "extreme deprivations" to state an Eighth Amendment claim based on the conditions of his confinement. *Harben-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Hudson*, 503 U.S. at 9). "[T]emporary inconveniences" will not suffice. *Powell v. Washington*, 720 F. App'x 222, 228 (6th Cir. 2017) (citing *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001)).

Specifically with regard to clean clothing, "[i]n this Circuit, a prisoner's claim of denial of clean clothes for a brief time fails to state an Eighth Amendment violation." *Bostic v. Mehr*, No. 20*1031-SHM-cgc, 2021 WL 5999305, at *5 (W.D. Tenn, Dec. 20, 2021) (citing *Walker v. State Dept. of Corr.*, No. 98-6586, 2000 WL 32057, *1–2 (6th Cir. Jan. 7, 2000)); *see also Wright v. Gregory*, No. 1:21-cv-P79-GNS, 2021 WL 4037594, at *4 (W.D. Ky. Sept. 3, 2021) ("[T]he

temporary inconvenience of . . . not having clean clothes . . . during Plaintiff's nine-day placement in segregation fails to state a claim upon which relief may be granted."); *Jackson v. Powell*, No. 1:18-cv-466, 2018 WL 3722158, at *8 (W.D. Mich. Aug. 6, 2018) ("Plaintiff's alleged temporary deprivations of hygiene items, exercise yard, and laundry service amount to minor inconveniences that do not rise to the level of an Eighth Amendment violation.") Certainly, if a lack of clean clothing results in some actual harm, it might rise to the level of an extreme deprivation. *Brown v. Timmerman-Cooper*, No. 2:10-cv-283, 2013 WL 430262, at *2 (S.D. Ohio Feb. 4, 2013) (The denial of laundry facilities or clean clothes may also constitute an Eighth Amendment violation, but only when the inmate claims to have 'suffered a physical injury or a disease as a result of these conditions.'"); *Hill v. Matthews,* No. 1:19-cv-853, 2020 WL 502607, at *10 (W.D. Mich. Jan. 31, 2020) (same); *Presley v. LMPD*, No. 3:16CV-118-TBR, 2017 WL 581325, at *4 (W.D. Ky. Feb. 13, 2017) (same); *Morris v. George*, No. 1:13-cv-00029, 2013 WL 2384330, at *3 (M.D. Tenn. May 30, 2013) (same).

Plaintiff attempts to shoehorn his "clean clothes" claim into that exception by alleging that denying him fresh clothing "subject[ed] him to re-infection." (ECF No. 1, PageID.10.) That allegation, however, is irrational; "[y]ou cannot get shingles from someone who has shingles." *See* Shingles (Herpes Zoster), About Shingles, Transmission, https://www.cdc.gov/shingles/about/transmission.html (visited Mar. 10, 2022). Instead, "[s]hingles is caused by varicella zoster virus (VZV), the same virus that causes chickenpox. After a person recovers from chickenpox, the virus stays dormant (inactive) in their body. The virus can reactivate later, causing shingles." *Id.* The Court, therefore, concludes that Plaintiff has failed to set forth a plausible Eighth Amendment claim against Defendant Unknown Party #3 regarding the denial of clean clothing while Plaintiff was in medical quarantine.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:     March 15, 2022                              /s/ *Maarten Vermaat*
                                                                        Maarten Vermaat
                                                                        United States Magistrate Judge

19